USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/22/2021

**UNITED STATES DISCTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x

**MEMO ENDORSED**

KENT SALVESON, ESQ., and EQD, LLC,
A Nevada limited liability company,

                 Plaintiffs,

            v.

SUNG YI, an individual,

                 Defendant.

——————————————————————— x

**No. 1:20-cv-06684**
**Hearing Date: December 15, 2020**
**Time: 1:00 p.m.**
**Affidavit of Consent Defendant**
**Sung Yi Attached hereto**

JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT AND DECREE

     Plaintiffs Kent Savleson, Esq. ("Salveson"), and EQD, LLC, a Nevada limited liability

company ("EQD") (collectively, the "Plaintiffs"), in conjunction with Defendant Sung Yi

("Defendant"), respectfully move this Court for entry of the attached Consent Judgment and

Decree, declaring that the Defendant transferred EQD LLC and its assets on July 2, 2016 to

Plaintiff Salveson. As grounds for this motion, the parties agree to the following:

     1.     The Plaintiffs initiated a declaratory relief action on August 20, 2020 against

Defendant Sung Yi ("Yi"), in his individual capacity and as the former 100% member of EQD.

The Defendant waived service of the lawsuit [Docket #3].

The Plaintiffs maintained in the declaratory relief action (the "Action") (and the Defendant agrees), that an actual controversy exists between the Parties concerning the transfer of EQD's membership interests and assets.

2.     In the Action, the Plaintiffs alleged that the Defendant purported to transfer 100% of his membership interests in EQD and EQD's assets on July 2, 2016 (EQD's real estate asset is a condominium located at 450 W. 17th Street, Unit 1009, New York, New York (the "Condo")). While the details of this transaction are explained in the Yi Affidavit and the Consent Judgment and Decree, the Action stems from the Defendant's contract to sell EQD's assets to a third party.

3.     Even though Defendant Yi does not contest that he agreed to sell EQD to Salveson in exchange for $400,000.00, and indeed did sell EQD to Salveson, a dispute has arisen concerning the *complete* transfer of EQD's membership interests and assets, because Defendant Yi signed a contract in his individual capacity (and not on behalf of EQD) concerning the Condo before selling everything to Plaintiff Salveson. The contract was never performed, and more importantly, Defendant Yi never accepted any money from any third party. Defendant Yi, however, failed to rescind the contract with the third party, and also was not permitted to enter into a contract because he never owned the Condo as an individual, therefore he could not agree to sell it. To bring this matter to a close, Defendant Yi agrees that a declaratory judgment is indeed necessary to declare and affirm the following: (1) on July 2, 2016, the Defendant, as the owner of EQD, transferred all of his membership interests in EQD to Plaintiff Savleson and included in this transfer were all of EQD's assets; and (2) the Parties agree to have included in the declaratory judgment that EQD did not enter into any contracts to sell its assets to any third parties prior to or at the time the Defendant transferred EQD (and EQD's assets) to Salveson.

4.      The Parties have conferred concerning a resolution of this litigation and have agreed on the terms of the attached Consent Judgment and Decree, which if entered by this Court, will declare EQD and its assets were indeed transferred to Salveson on July 2, 2016, without any liens, contingencies, encumbrances, or other contracts.

5.      The Consented Judgment is authorized by F.R.C.P. 57 and is similar to other contract claims where a plaintiff seeks declaratory relief. *See City of Leominster v. Pittsburgh-Des Moines Steel Co.*, (1962) 201 F.Supp. 66  - declaratory relief is appropriate to declare the rights of the parties pursuant to a contract.

Here, the Parties agree and seek a judgment affirming their prior agreement - that Salveson did indeed pay Yi more than $400,000.00 for EQD and EQD's assets. In exchange for these funds, Yi agreed to give to Plaintiff Salveson 100% ownership interest in EQD, which included both the membership interests and assets, and this occurred on July 2, 2016. Defendant Yi agrees that Savleson purchased EQD as a bona fide purchaser, because Yi sold EQD's assets free and clear of all liens, encumbrances and option contracts to sell to other potential buyers.

The Consented Judgment further states that the Defendant did not sign any option contracts on behalf of Plaintiff EQD when he was the owner, before he sold EQD to Salveson.

6.      Therefore, the Parties respectfully request that Court enter a judgment declaring that the Defendant transferred 100% of EQD to Salveson as of July 2, 2016, and when Defendant transferred his membership interests in EQD, he also transferred EQD's assets to Salveson and that as of July 2, 2016, EQD did not sign any contracts, options or otherwise, to sell its assets to any third party.

7.      The Parties respectfully request that since all are in agreement with the requested relief, that the Judgment for Declaratory Relief be entered on or before December 15, 2020. If

this Court agrees, the Parties will execute signatures on the Consent Judgment and Decree at any time prior to the hearing, or at this Court's request.

For the reasons above and as further set forth in the attached Consent Judgment and Decree, the Parties respectfully submit that this Joint Motion should be granted, and the attached Consent Judgment and Decree be entered.

Respectfully submitted,

For the Plaintiffs
Kent Salveson, Esq., and EQD LLC
/s/ Barney Balonick

_____
Barney Balonick (SBN# 4830113)
BALONICK LAW OFFICE, INC.
10100 Santa Monica Blvd #1700
Los Angeles, CA 90067
310.703.1755
310.703.1799 (facsimile)
bhb@balonicklaw.com

For the Defendant

Sung Yi (In Pro Per)
/s/ Sung Yi

# UNITED STATES DISCTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

_____x

KENT SALVESON, ESQ., and EQD, LLC,
A Nevada limited liability company,

              Plaintiffs,                 **No. 1:20-cv-06684**

     v.

SUNG YI, an individual,

              Defendant.

_____x

## CONSENT JUDGMENT AND DECREE

1.      This is an action for Declaratory Relief and Declaratory Judgment. This Action was initiated by the Plaintiffs on August 20, 2020 against Sung Yi (the "Defendant"). The Defendant is an individual and owned EQD, LLC until he sold it to Plaintiff Salveson on July 2, 2016.

### THE DEFENDANT'S AGREEMENT TO TRANSFER EQD

2.      An explanation of the genesis of the Parties' underlying agreement is necessary to explain why declaratory relief is both appropriate and agreed to by the Parties.

3.      Approximately six (6) years ago, an individual named Steve Woo ("Woo") applied for a $250,000 business loan from Pacific Mercantile Bank ("PMB") in June of 2014 – PMB initially denied the loan due to Woo's poor credit and illiquid assets (Yi Affidavit, ¶ 2).

4.      Woo prevailed on his long-time friend, Defendant Yi, to guarantee the loan with PMB; Yi agreed to guarantee the PMB loan based on Woo's financial projections and profit

potential (Yi Affidavit, ¶ 3). After Defendant Yi guaranteed the PMB loan, he discovered that Woo inflated his company's financial projections and exaggerated his company's profit potential – but by this time it was already too late because the PMB loan had funded (Yi Affidavit, ¶ 4).

5.      In fact, on July 28, 2014, Woo was approved for and obtained a loan in the amount of $250,000.00 from PMB (Yi Affidavit, ¶ 5).

6.      Woo withdrew the entire $250,000 and literally defaulted on the first PMB bank loan payment (Yi Affidavit, ¶ 6). Woo did not spend any of the loan proceeds on his business; instead he spent the entire amount of loan proceeds for personal needs abandoning his business and allowing it to fail (Yi Affidavit, ¶ 7). In fact, Woo filed bankruptcy on his company less than 60 days after obtaining the PMB loan (Yi Affidavit, ¶ 8).  Unfortunately for Defendant Yi, he had personally guaranteed the PMB loan (Ex. "A" Yi Affidavit, ¶ 9). Naturally, Defendant Yi, as the co-guarantor, had to repay PMB (Yi Affidavit, ¶ 10). [1]

7.      During 2014, Woo and his wife owned the Condo – they quitclaimed the Condo to EQD apparently to avoid some of Woo's other creditors (Ex. "B" Yi Affidavit, ¶ 12).

8.      When Woo defaulted, PMB sued both Woo and Yi on December 14, 2014 (Yi Affidavit, ¶ 13). Woo did not have any money to pay back PMB, so PMB focused its legal recovery of the $321,000.00 ($250,000.00 loan plus legal fees and costs) unsecured loan against Yi. (Yi Affidavit, ¶ 14).

9.      In response to the PMB suit, Yi demanded that Woo settle the claims made by PMB and take responsibility for the re-payment of the PMB loan (Yi Affidavit, ¶ 15).  On July 31, 2015, Woo agreed to settle the PMB bank loan by allowing PMB to record a second mortgage on the Condo in the amount of $321,000.00 (Yi Affidavit, ¶ 16).

---

[1] Remarkably, Yi did not receive any of the loan proceeds for any purpose (Yi Affidavit, ¶ 11).

10.     The settlement required Woo to pay-off the PMB second mortgage through a series of 6 monthly payments with a final balloon payment in December of 2015 (Yi Affidavit, ¶ 17).

11.     Again, Woo failed to make the first or any other loan payment on the $321,000 PMB second mortgage used to settle the unsecured PMB business loan claim (Yi Affidavit, ¶ 18).

12.     Woo again asked Yi to help by making yet another $321,000 loan to pay-off the second mortgage held by PMB from their settlement (Yi Affidavit, ¶ 19). Yi refused to make a loan to Woo believing it would never be repaid - instead Yi agreed to take title to the Condo by taking a 100% ownership of EQD which owned the Condo property in exchange for the payment of the $321,000 second mortgage secured in favor of PMB (Yi Affidavit, ¶ 20).

13.      Woo agreed and transferred and conveyed to Yi all right, title and interest in EQD which owned the Condo (Ex. "C" Yi Affidavit, ¶ 21). Yi was the new owner of EQD, which still owned the Condo (Yi Affidavit, ¶ 22). At no time did Defendant Yi take title to the Condo individually – EQD was the owner of record since 2014 (Yi Affidavit, ¶ 23).

14.     EQD owned the Condo and instead of leveraging EQD's assets, Yi personally borrowed $321,000.00 to pay the $321,000.00 PMB second mortgage secured by the Condo (Yi Affidavit, ¶ 24).

15.     In or around 2015, Woo wanted to re-purchase the Condo from Yi and promised that he would do so in 6 months (Yi Affidavit, ¶ 25). Woo, however, could not afford to re-purchase the Condo from Yi. Worse, Yi owed money to his lenders that made him the $321,000.00 loan to pay-off the $321,000.00 second mortgage secured against the Condo (Yi Affidavit, ¶ 26). Around this time, Defendant Yi signed an option contract with Woo, granting

Woo an option to re-purchase the Condo (Yi Affidavit, ¶ 27). To complete this transaction, however, Woo was required to pay $10,000.00 for the option, as well as the purchase price of the Condo – again, Woo never paid anything (Yi Affidavit, ¶ 28). Moreover, EQD as the owner of the Condo never signed the option contract, Defendant Yi did, rendering the option contract *void ab initio* (Yi Affidavit, ¶ 29).

16.      In any event, after more than a year of owning the Condo and never receiving any money from Woo,  Defendant Yi became financially distressed because he was making the loan payment on the $321,000.00 loan that he had borrowed personally to pay-off the $321,000.00 second mortgage held by PMB; causing further loss, he was not receiving any rent or other income from the Condo (Yi Affidavit, ¶ 30).  In fact, the Condo loan payment was draining Yi's financial resources (Yi Affidavit, ¶ 31).

18.     Yi decided to sell EQD to Plaintiff Salveson - Yi agreed to sell EQD and the Condo to Plaintiff Salveson approximately one year later for approximately $400,000.00 (Yi Affidavit, ¶ 32). By selling the Condo, Yi was able to pay-off the $321,000.00 he owed to his Lenders (Yi Affidavit, ¶ 33).

19.      For purposes of the case *sub judice,* the Defendant consents to a declaratory judgment and agrees that EQD never sold, hypothecated, transferred or assigned the Condo to any third party before he sold it to Plaintiff Salveson (Yi Affidavit, ¶ 33). The Defendant warranted on or before July 2, 2016 (and still maintains) that when he transferred 100% of EQD's membership and the Condo to Salveson, that no third party had any claims to title of the Condo (Yi Affidavit, ¶ 34).

20.      Yi agrees that there is an actual case or controversy that will: (1) serve a useful purpose in clarifying the legal relationship between the Parties, and (2) will terminate any

potential third-party claims and afford relief to the Plaintiffs. All Parties to this Action seek a declaratory judgment, adjudicating that the transfer of EQD and its assets from Defendant Yi to Plaintiff Salveson was done so freely, voluntarily, without being subject to any claims or contracts, and this occurred on July 2, 2016 (Yi Affidavit, ¶ 35). The Parties further consent to have this judgment entered *Nunc Pro Tunc* to July 2, 2016.

## PARTIES

21.     Plaintiff Kent Salveson is an attorney with a residence in Reno, Nevada. Since July 2, 2016, Plaintiff Salveson is currently the 100% membership interest holder of Plaintiff EQD, LLC. On file with this Court and attached as Ex. "A" to the Complaint is the Yi deposition transcript, evidencing the transfer from Defendant Yi to Plaintiff Salveson. Included in this ownership interest, Defendant Yi intended for Plaintiff Salveson to have full ownership and control over Plaintiff EQD and its sole asset, the Condo.

22.     Plaintiff EQD is a Nevada limited liability company that is registered to do business here in the State of New York and when the Defendant transferred EQD to Salveson, he knowingly transferred EQD's sole asset, the Condo (Yi Affidavit, ¶ 36).

23.     Defendant Sung Yi is a resident of the State of California. Defendant Yi was the 100% owner of Plaintiff EQD. When Yi sold EQD to Salveson, he accepted almost $400,000.00 from Salveson and Yi intended the Condo to be transferred along with 100% interest of EQD.

## BASIS FOR RELIEF

24.     In this Action, the Plaintiffs seek a declaratory judgment pursuant to F.R.C.P. 57 and 28 U.S.C.A. § 2201, et seq. As stated in the Notes to Federal Rules of Civil Procedure, compiled by the Supreme Court Advisory Committee, sub Rule 57: "...The existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact

upon which such legal relations depend, or of a status, may be declared..." *American Macaroni Mfg. Co. v. Niagra Fire Ins. Co. of New York* (1942) 43 F.Supp. 933.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such affidavit, whether or not further relief is or could be sought." 28 U.S.C. § 2201. *Wells Fargo Bank, N.A. v. Sharma* (2009) 642 F.Supp.2d 242.

"...While it is true that the granting of the declaratory remedy is discretionary with the district court and may be refused if it is being sought merely to determine the same issues involved in a case already pending, as seen, the mere pendency of another suit is not enough in itself to refuse a affidavit..." *Sears Roebuck & Co. v. Zurich Ins. Co.* (1970) 422 F.2d 587

25.     The Parties to this Action agree that an actual controversy has arisen between them, and is not related to any other pending case. The Defendant failed to properly protect EQD and his agreement with Plaintiff Salveson; Defendant Yi signed an option contract in his individual capacity, holding the Condo out for sale to a third party even though he never owned it individually. On this basis, Defendant Yi never had authority to sign an option contract and he was never the proper seller. Yet, even with the unenforceable option contract, Defendant Yi failed to inform Plaintiff Salveson of the option contract and also never ensured that the option contract that he did sign was rescinded. The Defendant warranted that once he sold EQD to the Plaintiff for $400,000.00, he sold it without any claims or exceptions. All Parties agree that the legal relations between them must be declared – EQD was transferred to Plaintiff Salveson and was not transferred subject to any option contracts given to a third party.

## AGREED STIPULATION OF FACTS

### Defendant Yi's Acquisition Of EQD, LLC And The Condo In 2015

26.     Woo transferred 100% of EQD to Yi and when this transfer happened, it was in no way a loan for Woo; it was not a financing arrangement with Woo, there were no contingencies, conditions, or post-closing conditions. (Dep. Trans., Vol. I, p. 21, L-8-25, Ex. "D") When this transfer occurred, Yi understood it to mean that he was the 100% owner of Plaintiff EQD, and that EQD's asset was the Condo. (Dep. Trans., Vol. I, p. 22, L3-14) Therefore, on September 1, 2015, Woo executed EQD's membership certificate that transferred 100% of EQD to Yi for $321,000.00 and the purchase of EQD by Yi from Woo vested all right, title and interest in EQD and its assets to Yi as the new 100% member and owner of Plaintiff EQD. Yi stipulates that when he was the owner of EQD, no one else owned it with him and he never signed any contracts on EQD's behalf to sell or transfer EQD's assets until he sold EQD to Plaintiff Salveson (Yi Affidavit, ¶ 37).Woo transferred EQD to Defendant Yi and their agreement was: "...in order to pay my [Yi's] friend back [for the settlement funds paid to PMB], I was going to take ownership of EQD/condo and then I was going to get a loan, borrow money off an interest in the condo and basically pay off the loan from my friend..." (Dep. Trans., Vol. I, p.20, L-10-14)

27.     While Yi owned EQD, he did sign an option contract *in his individual capacity* to sell the Condo, **but the prospective purchaser/optionee never paid for the option**, certainly never paid for the Condo, and the option contract was never signed by the Condo's true owner, EQD (Yi Affidavit, ¶ 38).

28.     Yi agrees that Plaintiff Salveson did not have knowledge of the option contract, and Yi further agrees that the option contract was not enforceable because it was never signed by the seller – EQD and no funds were ever received (Yi Affidavit, ¶ 39). Defendant Yi agrees that a declaratory judgment is indeed necessary to declare and affirm the following: (1) on July 2,

2016, the Defendant, as the owner of EQD, transferred all of his membership interests in EQD to Plaintiff Savleson and included in this transfer were all of EQD's assets; and (2) the Parties agree to have included in the declaratory judgment that EQD did not enter into any contracts to sell its assets to any third parties prior to or at the time the Defendant transferred EQD (and EQD's assets) to Salveson.

29.     The Current Controversy Between The Parties

30.     On October 15, 2015, Defendant Yi and Woo signed an option contract to sell the Condo, where in exchange for $10,000.00 to keep the option open, Woo had the right to re-purchase the Condo at an estimated value of $760,000.00. (Yi Affidavit, ¶ 40).[2]

31.     Woo never paid Yi $10,000.00 for the option, and in fact Woo never paid Yi anything for the option, and certainly never paid anything for the Condo. (Yi Affidavit, ¶ 41). Since Woo never paid the consideration to keep the option to purchase open, he lost the option. (Yi Affidavit, ¶ 42).

32.     Since Woo never paid the consideration for the option, and certainly never paid any money to re-purchase the Condo, Defendant Yi on July 2, 2016, Yi transferred Plaintiff EQD to Plaintiff Salveson and in exchange, Salveson paid Yi almost $400,000.00. (Yi Affidavit, ¶ 43).

33.     When Yi sold EQD (and EQD's assets) to Salveson, Yi did not tell Salveson that he signed an option contract with Woo on October 15, 2015. (Yi Affidavit, ¶ 44). Notably, the option was between Woo and Yi as an individual but by the time the option contract was signed, EQD was the owner of Condo and therefore, the option contract was not enforceable because it was signed by the wrong party to be charged. (Yi Affidavit, ¶ 45). Yi did not own the Condo, so he did not have authority to sign any options to sell it to any party. (Yi Affidavit, ¶ 46). Part of

---

[2] There is no option contract to sell EQD, only the Condo

the relief requested in this action for declaratory judgment is that this Court enter an order that Yi did not subject EQD to any contracts to sell its assets.

Of great significance, the October 15, 2015 option contract signed by Woo and Yi was not discovered until July 2020, prompting the filing of this declaratory relief action. (Yi Affidavit, ¶ 47).

34. Based on the attached deposition testimony of Yi, Yi consents to a declaratory judgment stating that EQD did not execute any option contracts with any party and that 100% of EQD and EQD's asset (i.e., the Condo) was transferred to Savleson on July 2, 2016. (Yi Affidavit, ¶ 48).

35. As things stand now, however, without a declaratory judgment stating that EQD was transferred to Savleson on July 2, 2016, a controversy has arisen as to whom owns EQD and when, and if there were any options to re-purchase EQD and or its assets from the time Yi transferred it.

36. Defendant Yi agrees that he has had ample time to retain counsel but elected not to do so for this Action (Yi Affidavit, ¶ 49).

37. Defendant Yi holds no possessory interest, fixed or contingent, in EQD and intended to unequivocally transfer it to Plaintiff Salveson on July 2, 2016 (Yi Affidavit, ¶ 50).

Accordingly, it is hereby ORDRED, ADJUDGED and DECREED:

1. The Plaintiffs, Kent Salveson, Esq., and EQD LLC, are entitled to a declaratory judgment pursuant to FRCP 57 and 28 U.S.C.A. § 2201.

2. The Parties' joint Motion for Entry of Consent Judgment and Decree is GRANTED, and: (i) Plaintiff Salveson is the 100% member of EQD, LLC; (ii) that Defendant Yi transferred 100% of EQD, LLC to Plaintiff Salveson on July 2, 2016, (iii) that EQD is not

subject to any contracts to sell any of its assets; and (iv) that this declaratory judgment be entered

*Nunc Pro Tunc* to July 2, 2016.

      3.    Each Party to bear its own fees, expenses and costs.

Entered this 15th day of December 2020.


*Katharine H Parker*  **1/22/2021**
_____

KATHARINE H. PARKER
UNITED STATES MAGISTRATE

*Kent Salveson*
_____
KENT SALVESON, ESQ.

*Kent Salveson*
_____
KENT SALVESON, FOR
EQD LLC

_____
SUNG YI

CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, the foregoing Status Report was filed electronically utilizing the Court's CM/ECF filing system. Notice of this filing will be sent by operation of this Court's electronic filing system to all parties' (for Sung Yi – sung.yi@mail.com) or their counsel of record indicated on the filing receipt. Parties may access this filing through the Court's system.

By: /s/ Barney Balonick

BALONICK LAW OFFICE, INC.
Attorneys for Plaintiffs
KENT SALVESON, ESQ., and
EQD LLC

# UNITED STATES DISCTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

KENT SALVESON, ESQ., and EQD, LLC,
A Nevada limited liability company,

                Plaintiffs,

                          **No. 1:20-cv-06684**

                          **AFFIDAVIT OF DEFENDANT
SUNG YI IN SUPPORT OF
JOINT MOTION FOR ENTRY
OF CONSENT JUDGMENT AND
DECREE**

    v.

SUNG YI, an individual,

                Defendant.

———————————————————————x

      Defendant Sung Yi ("Affiant") being first duly sworn and upon his oath, states as follows:

      1.     I, Sung Yi, am over 21 years of age and fully competent to give the testimony in this Affidavit. I have personal knowledge of all facts stated herein, they are true and correct, and I would and could testify competently about the contents of this Affidavit should my testimony be required.

      For a start, I wish to mention that I am aware that I am a party to this Action. I have had the opportunity to retain counsel but decided not to do so because I agree that a declaratory judgment should be entered in this Action.

2.      Approximately six (6) years ago, an individual named Steve Woo ("Woo") applied for a $250,000 business loan from Pacific Mercantile Bank ("PMB") in June of 2014 – PMB initially denied the loan due to Woo's poor credit and illiquid assets.

3.      Woo prevailed on me, his long-time friend, to guarantee the loan with PMB; I agreed to guarantee the PMB loan based on Woo's financial projections and profit potential.

4.      After I guaranteed the PMB loan, I discovered that Woo inflated his company's financial projections and exaggerated his company's profit potential – but by this time it was already too late because the PMB loan had funded.

5.      In fact, on July 28, 2014, Woo was approved for and obtained a loan in the amount of $250,000.00 from PMB.

6.      Woo withdrew the entire $250,000 and literally defaulted on the first PMB bank loan payment.

7.      Woo did not spend any of the loan proceeds on his business; instead he spent the entire amount of loan proceeds for personal needs, abandoned his business and allowed it to fail.

8.      In fact, Woo filed bankruptcy on his company less than 60 days after obtaining the PMB loan.

9.      Unfortunately for me, I personally guaranteed the PMB loan. Attached as Ex. "A" to my affidavit is a true and correct copy of the PMB loan documents.

10.     Naturally, as the co-guarantor, I had to repay PMB.

11.     I did not receive any of the PMB loan proceeds, Woo took the money from the PMB loan and spent it in short order.

12.     During 2014, Woo and his wife owned the Condo – they quitclaimed the Condo to EQD apparently to avoid some of Woo's other creditors. Attached as Ex. "B" to my affidavit

is a true and correct copy of the quitclaim deed from Woo and his wife where they quitclaimed the Condo into EQD LLC.

13.     When Woo defaulted, PMB sued both Woo and I on December 14, 2014

14.     Woo did not have any money to pay back PMB, so PMB focused its legal recovery of the $321,000.00 ($250,000.00 loan plus legal fees and costs) unsecured loan against me.

15.     In response to the PMB suit, I demanded that Woo settle the claims made by PMB and take responsibility for the re-payment of the PMB loan.

16.     On July 31, 2015, Woo agreed to settle the PMB bank loan by allowing PMB to record a second mortgage on the Condo in the amount of $321,000.00.

17.     The settlement required Woo to pay-off the PMB second mortgage through a series of 6 monthly payments with a final balloon payment in December of 2015.

18.     Again, Woo failed to make the first or any other loan payment on the $321,000 PMB second mortgage used to settle the unsecured PMB business loan claim.

19.     Woo again asked me to help by making yet another $321,000 loan to pay-off the second mortgage held by PMB from their settlement.

20.     I refused to make a loan to Woo believing it would never be repaid - instead I agreed to take title to the Condo by taking a 100% ownership of EQD which owned the Condo property in exchange for the payment of the $321,000 second mortgage secured in favor of PMB.

21.     Woo agreed and transferred and conveyed to me all right, title and interest in EQD which owned the Condo,

22.     I was the new owner of EQD, which still owned the Condo.

23.     At no time did I take title to the Condo individually – EQD was the owner of record since 2014.

24.     EQD owned the Condo and instead of leveraging EQD's assets, I personally borrowed $321,000.00 to pay the $321,000.00 PMB second mortgage secured by the Condo.

25.     In or around 2015, Woo wanted to re-purchase the Condo from me and promised that he would do so in 6 months.

26.     Woo, however, could not afford to re-purchase the Condo from me. Worse, I owed money to my lenders that made me the $321,000.00 loan to pay-off the $321,000.00 second mortgage secured against the Condo. I decided to sell EQD. Attached as Ex. "D" to my affidavit is a true and correct copy of my transfer of EQD to Plaintiff Salveson.

27.     Around this time, I signed an option contract with Woo, granting Woo an option to re-purchase the Condo.

28.     To complete this transaction, however, Woo was required to pay $10,000.00 for the option, as well as the purchase price of the Condo – again, Woo never paid anything.

29.     Moreover, EQD as the owner of the Condo never signed the option contract, I did. I was hoping that Woo would make good on his word and pay me back, so I agreed to sign the option contract. Woo never paid anything to me. When I decided to sell EQD and the Condo to Kent, I was still communicating with Woo. I conveyed to him that I was selling the Condo to Kent because Woo could never complete any of the terms of the option contract. Woo never objected to my selling of EQD and the Condo to Kent.

30.     In any event, after more than a year of owning the Condo and never receiving any money from Woo, I became financially distressed because I was still making the loan payment

on the $321,000.00 loan that I borrowed personally to pay-off the $321,000.00 second mortgage held by PMB; causing further loss, I was not receiving any rent or other income from the Condo.

31.     In fact, the Condo was draining my financial resources.

32.     I decided to sell EQD to Plaintiff Salveson - I agreed to sell EQD and the Condo to Plaintiff Salveson approximately one year later for approximately $400,000.00, which I did receive.

33.     By selling the Condo, I was able to pay-off the $321,000.00 he owed to my Lenders.

34.     I promised Kent, on or before July 2, 2016 (and still promise) that when I transferred 100% of EQD's membership and the Condo to Kent, that no third party had any claims to title of the Condo.

35.     I agree that there is an actual case or controversy that will: (1) serve a useful purpose in clarifying the legal relationship between the Parties, and (2) will terminate any potential third-party claims and afford relief to the Plaintiffs. I am in agreement with the Plaintiffs and join, respectfully, with their request for a declaratory judgment; adjudicating that the transfer of EQD and its assets from myself to Plaintiff Salveson and this was done so freely, voluntarily, without being subject to any claims or contracts, and this occurred on July 2, 2016.

36.     I knowingly transferred EQD to Plaintiff Salveson (Kent) on July 2, 2016. I inadvertently forgot to send a formal rescission of the option contract to Woo. Woo never completed any of the terms of the option contract and he also knew that I sold EQD (and the Condo) to Kent when I did this on July 2, 2016.

37.     I stipulate that when I was the owner of EQD, no one else owned it with me and I never signed any contracts on EQD's behalf to sell or transfer EQD's assets until he sold EQD to Plaintiff Salveson.

38.     To be perfectly clear, While I owned EQD, I did sign an option contract *in my individual capacity* to sell the Condo, **but the prospective purchaser/optionee never paid for the option**, certainly never paid for the Condo, and the option contract was never signed by the Condo's true owner, EQD.

39.     I agree that Plaintiff Salveson did not have knowledge of the option contract, and I further agree that the option contract was not enforceable because it was never signed by the seller – EQD, and no funds were ever received from Woo or any other party other than the Plaintiff.

40.     As to the option contract, On October 15, 2015, Woo and I signed an option contract to sell the Condo, where in exchange for $10,000.00 to keep the option open, Woo had the right to re-purchase the Condo at an estimated value of $760,000.00.

41.     Woo never paid Yi $10,000.00 for the option, and in fact Woo never paid me anything for the option, and certainly never paid anything for the Condo.

42.     Since Woo never paid the consideration to keep the option to purchase open, he lost the option.

43.     Woo could never perform his contractual obligations so on July 2, 2016, I transferred Plaintiff EQD to Plaintiff Salveson and in exchange, Salveson paid me almost $400,000.00.

44.     When I sold EQD (and EQD's assets) to Salveson, I did not tell Salveson that I signed an option contract with Woo on October 15, 2015. I simply forgot about the option

contract. I promised Kent that he could have EQD free and clear which is why I am consenting to this declaratory judgment – to affirm our agreement.

45.     Notably, the option was between Woo and me as an individual but by the time the option contract was signed, EQD was the owner of Condo and therefore, the option contract was not enforceable because it was signed by someone other than the owner.

46.     In any event, since I never owned the Condo, I had no authority to sign the option contract. It should have been signed by EQD. Regardless, to this very day, Woo has never displayed any financial ability to pay for the option, and certainly does not have the funds to pay for the Condo. I have known Woo for many years, I know his financial status and he never had the ability to perform his obligations under the option contract.

47.     I totally forgot about the option contract until July 2020 which is why I agree to cooperate in this Action.

48.     I consent to a declaratory judgment stating that EQD did not execute any option contracts with any party and that 100% of EQD and EQD's asset (i.e., the Condo) was transferred to Savleson on July 2, 2016.

49.     I do not need counsel to consent to this declaratory judgment. I am fully aware of the consequences here and I am more than willing to answer any questions posed either by the Plaintiff's counsel or this Court.

50.     I do not hold any possessory interest in EQD or EQD's assets, and fully intended to transfer EQD and the Condo to Plaintiff Salveson on July 2, 2016. Therefore, I do consent and join in the request that Plaintiffs Kent Salveson, Esq., and EQD LLC, receive a declaratory judgment in their favor, where this Court will hopefully agree that Plaintiff Salveson is the 100% member of EQD LLC, has been so since I sold it to him on July 2, 2016. I also agree that a

judgment should be entered that EQD never executed any contracts selling any of its assets and

agree that this judgment can be entered as of July 2, 2016, affirming my contract with Plaintiffs

Salveson EQD LLC.

FURTHER AFFIANT SAYETH NOT:

_____

Sung Yi

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on the day of October, 2020, to certify which witness my hand an official seal.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____

Subscribed and sworn to (or affirmed) before me on this **23**
day of __October__, __2020__ by _____
Sung Yi,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)          Signature __Marva C Bogle__



MARVA C. BOGLE
Notary Public - California
Orange County
Commission # 2296726
My Comm. Expires Jul 20, 2023